ARULKUMAR v. ARULKUMAR
2022 OK 90
Case Number: 119675
Decided: 11/15/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 90, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE THE MARRIAGE OF:
RAISA ARULKUMAR, Petitioner/Appellant,
v.
SAILESH ARULKUMAR, Respondent/Appellee.
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
Honorable Martha Oakes, District Judge
¶0 Mother gave notice of her intent to relocate with the parties' only child from Oklahoma City to New York City to which Father timely objected. Although finding Mother's request was made in good faith, the trial court denied the relocation request finding Father met his burden showing relocation was not in the child's best interest. Mother appealed the trial court's ruling, and we retained the matter. We hold the trial court did not abuse its discretion in denying Mother's proposed relocation.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
JUDGMENT OF THE TRIAL COURT AFFIRMED.
Ryan J. Reaves and Maggie Lanier, Mullins Mullins Sexton & Reaves, P.C., Oklahoma City, Oklahoma, for Petitioner/Appellant.
John W. Gile, Matthew R. Gile, and Leslie D. Gile-Erwin, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Respondent/Appellee.
ROWE, J:
I. BACKGROUND
¶1 Raisa Pinto ("Mother") and Sailesh Arulkumar ("Father") were married in 2015. Both parents are trained physicians who attended medical school in India. Mother is licensed to practice in Hematology and Oncology. Father is an anesthesiologist practicing in the area of pain management. In the summer of 2017, the couple moved to Oklahoma to allow Mother to attend a three-year Hematology and Oncology fellowship at the University of Oklahoma Health Sciences Center ("OUHSC"). In July 2017, shortly after beginning her fellowship, Mother gave birth to the couple's only child. At the time, Father was working in Tulsa, commuting from the couple's home in Oklahoma City. He later took a job in Oklahoma City to reduce his commute time.
¶2 The couple's marriage eventually deteriorated, and in April 2018, Mother filed for divorce in Oklahoma County. On January 10, 2020, the trial court granted the couple's divorce on the grounds of incompatibility. In its order, the trial court designated Mother as the custodial parent, but ordered equal visitation time. The couple has adhered to the custody plan and split time with their child equally since the divorce.
¶3 While completing the final year of her fellowship, Mother began her search for employment. During her job search, Mother applied to 120 positions and underwent thirty interviews. Of those interviews, Mother received seven job offers for positions located in California, New York, and Pennsylvania. Mother did not receive any job offers in Oklahoma.
¶4 On August 17, 2020, prior to accepting an out of state job offer, Mother contacted Father to inquire if he knew of any job openings in Oklahoma. The next day Mother accepted an offer from Mount Sinai Hospital in New York. Later that month, Mother notified Father of her intent to relocate to which Father timely objected. Subsequently, Mother filed an application for temporary order permitting relocation during the pendency of litigation on her original request to relocate. Mother's temporary order request was denied on November 18, 2020, and at the same hearing, the trial court appointed a Guardian Ad Litem ("GAL").
¶5 The parties litigated Mother's relocation application in March 2021. The trial court received evidence concerning Mother's job search and employment opportunity in New York; Mother and Father's relationship with the child; the child's life and educational opportunities in Oklahoma and New York; the child's relationship with each parent's other family members; the likely impact of travel on the child; and the impact of proposed visitation schedules on the child. The trial court determined Mother's request was made in good faith, which shifted the burden to Father to show the proposed relocation was not in child's best interest. The trial court found Father met his burden and denied Mother's request to relocate.
¶6 Mother appealed alleging five counts of error: (1) the court erred by placing undue weight on maintaining Father's existing visitation; (2) the court erred in applying the relocation factors; (3) the court erred by assuming Mother would remain in Oklahoma if relocation was denied; (4) the trial judge erred in failing to consider alternative visitation schedules; and (5) the court erred by relying on prejudicial testimony from the Guardian Ad Litem. We retained the matter for review.
II. STANDARD OF REVIEW
¶7 In child custody cases, the best interest of the child is the paramount consideration. We will not disturb the trial court's judgment regarding custody absent an abuse of discretion. Scocos v. Scocos, , ¶ 5, , 1070 (quoting Daniel v. Daniel, , ¶ 21, , 871). This Court has said that "an abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Fent v. Oklahoma Natural Gas Co., , ¶ 12, , 481. We give deference to the trial court in reviewing custody decisions because the trial judge had the opportunity to listen to evidence, observe the witnesses and parties, and ask questions. Scocos, ¶ 5, 369 P.3d at 1070. Only when the ruling is contrary to the evidence or where there is no rational basis in evidence will we reverse. Fent, ¶ 12, 27 P.3d at 481.
III. DISCUSSION
¶8 A custodial parent has a right to change his or her residence "subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child." . The relocating parent must supply the nonrelocating parent with notice of a proposed relocation which allows an opportunity for objection. (B)(1). If there is an objection, the relocating parent "has the burden of proof that the proposed relocation is made in good faith." (K). If that burden of proof is met, the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child. Id. In determining whether relocation serves the child's best interest, the court must consider the following non-exhaustive list of statutory factors:
a. the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life,
b. the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child,
c. the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties,
d. the child's preference, taking into consideration the age and maturity of the child,
e. whether there is an established pattern of conduct of the person seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating person,
f. whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity,
g. the reasons of each person for seeking or opposing the relocation, and
h. any other factor affecting the best interest of the child.
(J)(1). No one factor is dispositive or should be given more weight than the other factors. A trial court is to consider and weigh all the evidence relevant to each factor and decide whether the factor weighs in favor of relocation, against relocation, or is neutral.
A. The Trial Court Did Not Place Undue Weight on Maintaining Father's Visitation. 
¶9 Mother asserts the trial court placed undue weight on preserving Father's visitation in denying her proposed relocation. Mother relies upon Scocos v. Scocos, , , wherein we stated "visitation rights alone are an insufficient basis on which to deny relocation," and a "custodial parent's relocation should not be disallowed solely to 'maintain the existing visitation patterns.'" Scocos, ¶ 16, 369 P.3d at 1073 (quoting Kaiser v. Kaiser, , ¶ 29, , 286).
¶10 In Scocos, the father failed to present any evidence that Mother was unfit or that the move would not be in the best interest of the child. Father's only concern was the interruption to his visitation, which "is understandably difficult and upsetting for him, but maintaining his existing visitation schedule did not justify the district court's order restricting mother's ability to leave Oklahoma to pursue her career opportunity and attempt to find a better life for herself and their child." Id., ¶ 16, 369 P.3d at 1073 (quoting Kaiser v. Kaiser, , ¶ 29, , 286). Father in the present case provided ample evidence demonstrating the move would not be in the best interest of the child, but Mother argues the trial court exclusively relied on the interruption to Father's visitation to support its denial of Mother's request to relocate.
¶11 Considering a change in visitation is relevant to the best interest inquiry in (J)(1) even though visitation alone is an insufficient basis to deny relocation. Upon review of the record, we find the trial court's reason for denying relocation was not exclusively based upon maintaining Father's existing visitation.
¶12 The natural interrelationship of the statutory factors require that they be read in harmony, and not in isolation. Relocations inevitably produce distance and changes in familial relationships, which undoubtedly impact a child's development and quality of life. We will not impose an unreasonable burden on trial courts to consider each of the statutory factors in isolation, as most factors and the facts that are applied are naturally intertwined. While it is true that the trial court discussed Father's day-to-day involvement with the child and his current visitation throughout its ruling, this was not an abuse of discretion. Accordingly, we find the trial court did not place undue weight on maintaining Father's visitation when applying each factor.
B. The Trial Court Correctly Applied Each Factor.
¶13 Mother contends the trial court abused its discretion in applying the relocation factors by failing to appropriately weigh each factor, such that the trial court's ruling is contrary to the evidence. The trial court acknowledged the loving relationship both parents share with their child and their involvement in his life. The trial court noted that maintaining Father's relationship with child living in New York is not feasible due to distance and travel logistics. And the trial court considered the child's familial relationships with each parent's family and the effect of relocation on those relationships.
¶14 The trial court also weighed the effect of relocation on the child's emotional and educational development. For example, the court determined the distance created by Mother's relocation would almost certainly deprive the child of his close bond with Father and Father's family, which would negatively impact his emotional development. Regarding the child's educational development, the trial court determined long travel days twice a month would almost certainly result in the child missing a Monday or Friday at school, which could be detrimental to his learning and performance.
¶15 Additionally, the trial court contemplated whether the proposed relocation would enhance the general quality of life for both Mother and child. The trial court considered Mother's job opportunity, finances, commute to and from work, and access to museums, theaters, and other cultural opportunities. The trial court found that while Mother's quality of life may improve with her job, the child's life would not necessarily be enhanced when compared to his quality of life in Oklahoma.
¶16 Ultimately, the trial court found the proposed relocation would deprive the child of a relationship with his Father and affect his emotional and educational development, while affording no material improvement in his quality of life. The trial court's findings as to each factor has a rational basis in the evidence presented. Accordingly, we find no abuse of discretion in the trial court's application of the relevant factors.
C. The Trial Court Did Not Base its Decision on the Assumption Mother 
Would Remain in Oklahoma if Her Relocation Request Was Denied.
¶17 When considering a relocation request, the trial court is prohibited from considering "whether the person seeking relocation of the child has declared that he or she will not relocate if relocation of the child is denied." (J)(2)(b). To trigger § 112.3(J)(2)(b), the relocating party must declare that he or she will not relocate if the relocation request is denied. Here, the record does not reflect that Mother made a declaration as to her intentions if relocation was denied.
¶18 Mother contends nonetheless that the trial court violated § 112.3(J)(2)(b) by assuming she would remain in Oklahoma if her relocation request was denied. To support her contention, Mother asserts the trial court only considered two possible outcomes when denying her request to relocate: (1) Mother and child living in New York; or (2) both parents remaining in Oklahoma. We reject Mother's contention that the trial court operated on such an assumption.
¶19 The purpose of § 112.3(J)(2)(b) is to prevent trial courts from considering a relocating party's stated intent to remain if relocation is denied. Consideration of a stated intent to remain runs the risk of circumventing application of the statutory factors and a thorough review of the merits of a requested relocation. We find no evidence the trial court engaged in a cursory analysis of the relocation factors or that the trial court based its decision primarily on the alleged assumption that Mother would remain in Oklahoma if relocation was denied. The record reflects the trial court engaged in a thorough and deliberate analysis of each relocation factor. Accordingly, we find the trial court did not violate § 112.3(J)(2)(b).
D. The Trial Court Did Not Err by Not Crafting or Considering Alternative 
Visitation Schedules.
¶20 Relying upon Harrison v. Morgan, , , Mother contends the trial court erred by failing to craft its own alternative schedule in addition to Mother's proposed schedule. In Harrison, after the couple divorced, the father gave timely notice of his intent to relocate with the children from Guymon, Oklahoma to Poteau, Oklahoma to which the mother objected. The trial court denied father's request and he appealed. When reviewing the trial court's ruling regarding factor (c), COCA agreed with father that the trial court's finding was contrary to existing law because it ignored the Advisory Guidelines authorized for development by the Legislature in (C). Harrison, ¶ 44, 191 P.3d at 627. Mother contends COCA's holding requires a trial court to consider not only schedules proposed by the parties but to consider whether any other feasible schedule might exist under the circumstances.
¶21 The statute provides that the Advisory Guidelines may be used by trial courts as deemed necessary. Thus, the Advisory Guidelines are permissive, not compulsory. Nothing in (J)(1)(c) imposes an obligation on the trial court to craft its own visitation schedule that would best suit the parties and the child; nor does our jurisprudence require such an obligation. We decline to import COCA's holding in Harrison to the facts of this case.
¶22 Additionally, the record demonstrates the trial court considered Mother's proposed visitation schedule which she was questioned about on direct and cross examination, and considered the GAL's proposed alternative schedule. The trial court properly considered the proposed visitation schedules and committed no error by failing to craft its own alternative visitation schedule.
E. The Trial Court Did Not Improperly Rely on the Guardian Ad Litem's 
Testimony. 
¶23 A Guardian Ad Litem may be appointed to objectively advocate on behalf of the child after conducting an investigation of all matters concerning the best interests of the child. (A). Among many responsibilities, the GAL shall present written factual reports concerning the best interest of the child to the parties and court prior to trial. Id. § 107.3(A)(2)(d). In addition to the responsibilities provided in § 107.3(A), a GAL "shall certify that he or she agrees to follow the best practices described within the standard operating manual." Id. § 107.3(A)(4).
¶24 Mother contends to the extent the trial court relied on GAL's recommendation and testimony, it erred because GAL did not advise the parties of her position prior to the hearing and her testimony was prejudicial. GAL provided the parties a comprehensive written report prior to trial detailing her investigation. Throughout her report she stated, "[t]his GAL would like to listen to the evidence presented and testimony of witnesses regarding these issues prior to presenting additional analysis on this factor and her overall recommendation of best interests."
¶25 Mother argues GAL was required by statute to provide the position she intended to present at trial to avoid surprise. The applicable statute requires a GAL to "present written factual reports to the parties and court prior to trial or at any other time as specified by the court on the best interests of the child, which determination is solely the decision of the court." The statute does not require a GAL to state her recommendation pretrial. Accordingly, we find GAL did not violate the statute by waiting until trial to make her recommendation.
¶26 Mother also contends the trial court erred in considering GAL's testimony because GAL failed to objectively advocate on behalf of the child as required by § 107.3(A)(2). She argues much of GAL's report and testimony was emotional, and focused substantially on her feelings, rather than the objective analysis of the facts, therein prejudicing Mother. Even though GAL's testimony may have been emotional, the trial court's consideration of her testimony does not constitute fundamental error on behalf of the trial court as suggested by Mother. A fundamental error compromises the integrity of the proceeding to such a degree that the error has a substantial effect on the rights of one or more of the parties. Sullivan v. Forty-Second W. Corp., , ¶ 7, , 803. Mother has failed to demonstrate how GAL's testimony compromised the integrity of the proceeding to such a degree that the error had a substantial effect on her rights. The trial court gave appropriate weight to GAL's report and testimony. The trial court thanked GAL for her work and noted "just so that the record is clear, it's just that, a recommendation" and that "this Court does not always follow the GAL recommendations." Accordingly, we do not find the trial court erred in considering the report or testimony from GAL.
IV. CONCLUSION
¶27 In custody cases, the paramount consideration is the best interest of the child. We will examine and weigh the trial court's record, but it is beyond our reach to disturb the trial court's decision unless it is found to be clearly contrary to the weight of the evidence. Based on our review we do not find that the trial court placed undue weight on maintaining Father's existing visitation, or that it abused its discretion in applying the statutory relocation factors. Nor do we find the trial court improperly assumed Mother would remain in Oklahoma if relocation was denied or failed to consider alternative visitation schedules. Finally, we do not find the trial court erred in considering the testimony of the Guardian Ad Litem. The trial court's judgment in denying Mother's relocation request is affirmed.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
JUDGMENT OF THE TRIAL COURT AFFIRMED.
Darby, C.J., Kane, V.C.J., Winchester, Edmondson, Combs, Rowe, and Kuehn, JJ., concur.
Kauger and Gurich, JJ., dissent.
FOOTNOTES
 Whether Mother could have obtained employment in Oklahoma was a matter of some controversy. Throughout the good faith portion of the hearing, Mother took the position that she could not find employment in Oklahoma. Father included live testimony from Human Resources personnel from two prospective employers in Oklahoma (one in Lawton, another in Tulsa) tending to show that both employers were prepared to make offers to Mother had she requested to proceed in the interview process. In its ruling, the trial court found Mother's request was made in good faith but concluded that it was possible for Mother to find employment in Oklahoma.
 "A parent entitled to the custody of a child has a right to change his residence, subject to the power of the district court to restrain a removal which would prejudice the rights or welfare of the child." .
 "B. 1. Except as otherwise provided by this section, a person who has the right to establish the principal residence of the child shall notify every other person entitled to visitation with the child of a proposed relocation of the child's principal residence as required by this section." (B)(1).
 "K. The relocating person has the burden of proof that the proposed relocation is made in good faith. If that burden of proof is met, the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child." (K).
 "The court may not: . . . b. consider whether the person seeking relocation of the child has declared that he or she will not relocate if relocation of the child is denied." (J)(2)(b).
 Mother also contends when applying factors (a) and (b), the trial court was required to discuss and consider the effect of Mother moving without the child. Specifically, Mother states:
In the present case, the trial court wholly failed to mention at any point during the ruling the effect on the minor child of Mother moving to New York while the minor child remained in Oklahoma. Such considerations are required. (J)(1)(a) requires consideration of "the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate." (J)(1)(b) requires the Court to consider "the likely impact the relocation will have on the child's physical, educational, and emotional development," which is not limited solely to addressing the effect of the move on the non-relocating party.
Appellant's Reply Brief, pg. 24. The statute requires trial courts to determine what is in the best interest of the child as it pertains to the proposed relocation. Here, the proposed relocation contemplated relocation of Mother with the child, not relocation of Mother without the child. Further, nothing in the relocation factors requires a trial court to consider the prospect of the custodial parent moving without the child.
 Factor (c) provides: "the feasibility of preserving the relationship between the nonrelocating person and the child through suitable visitation arrangement, considering the logistics and financial circumstances of the parties." (J)(1)(c).
 (C) provides,
"C. 1. The Administrative Director of the Courts shall develop advisory guidelines for use by the district courts when parties to any action concerning the custody of a child are unable to mutually agree upon a visitation schedule.
2. The advisory guidelines should include the following considerations at a minimum:
a. a preference for visitation schedules that are mutually agreed upon by both parents over a court-imposed solution,
b. a visitation schedule which should maximize the continuity and stability of the life of the child,
c. special considerations should be given to each parent to make the child available to attend family functions, including funerals, weddings, family reunions, religious holidays, important ceremonies, and other significant events in the life of the child or in the life of either parent which may inadvertently conflict with the visitation schedule,
d. a visitation schedule which will not interrupt the regular school hours of the child,
e. a visitation schedule should reasonably accommodate the work schedule of both parents and may increase the visitation time allowed to the noncustodial parent but should not diminish the standardized visitation schedule provided in Section 111.1 of Title 43 of the Oklahoma Statutes,
f. a visitation schedule should reasonably accommodate the distance between the parties and the expense of exercising visitation,
g. each parent should permit and encourage liberal electronic contact during reasonable hours and uncensored mail privileges with the child, and
h. each parent should be entitled to an equal division of major religious holidays celebrated by the parents, and the parent who celebrates a religious holiday that the other parent does not celebrate shall have the right to be together with the child on the religious holiday."
 (A) provides "By January 1, 2005, the Administrative Director of the Courts shall have developed a standard visitation schedule and advisory guidelines which may be used by the district courts of this state as deemed necessary."
 We are not bound by the decisions of the Court of Civil Appeals. "The Court of Civil Appeals opinions are not binding on this Court. . ." Foshee v. Foshee, , ¶ 14, n.6, , 1168.
 Examples of alternative visitation schedules considered in the trial record include: (1) discussion of sending child to pre-K and consideration of attending Pre-K in both Oklahoma and New York (Trial Tr. vol. 3, 485:17-490:15); (2) discussion of altering visitation schedule if Mother did not take the 10-day vacation (Trial Tr. vol. 2, 423:9-424:4); (3) discussion of accommodating school holiday schedules: whether child could miss school Friday if there was a Thursday holiday, or missing school on Monday if there was a Tuesday holiday (Trial Tr. vol. 3, 470:1-472:25); (4) consideration of giving Father every Christmas and Thanksgiving rather than alternating each year (Trial Tr. vol. 3, 473:1-474:6).
 (A) provides
"A. 1. In any proceeding when the custody or visitation of a minor child or children is contested by any party, the court may appoint an attorney at law as guardian ad litem upon motion of the court or upon application of any party to appear for and represent the minor children.
2. The guardian ad litem may be appointed to objectively advocate on behalf of the child and act as an officer of the court to investigate all matters concerning the best interests of the child. In addition to other duties required by the court and as specified by the court, a guardian ad litem shall have the following responsibilities:
a. review documents, reports, records and other information relevant to the case, meet with and observe the child in appropriate settings, and interview parents, caregivers and health care providers and any other person with knowledge relevant to the case including, but not limited to, teachers, counselors and child care providers,
b. advocate for the best interests of the child by participating in the case, attending any hearings in the matter and advocating for appropriate services for the child when necessary,
c. monitor the best interests of the child throughout any judicial proceeding,
d. present written factual reports to the parties and court prior to trial or at any other time as specified by the court on the best interests of the child, which determination is solely the decision of the court, and
e. the guardian ad litem shall, as much as possible, maintain confidentiality of information related to the case and is not subject to discovery pursuant to the Oklahoma Discovery Code.
3. Expenses, costs, and attorney fees for the guardian ad litem may be allocated among the parties as determined by the court.
4. The Oklahoma Bar Association shall develop a standard operating manual for guardians ad litem which shall include, but not be limited to, legal obligations and responsibilities, information concerning child abuse, child development, domestic abuse, sexual abuse, and parent and child behavioral health and management including best practices. After publication of the manual, all guardians ad litem shall certify to the court in which he or she is appointed as a guardian ad litem that the manual has been read and all provisions contained therein are understood. The guardian ad litem shall also certify that he or she agrees to follow the best practices described within the standard operating manual. The Administrative Office of the Courts shall provide public access to the standard operating manual by providing a link to the manual on the Oklahoma State Courts Network (OSCN) website."
 (A)(2(d): "present written factual reports to the parties and court prior to trial or at any other time as specified by the court on the best interests of the child, which determination is solely the decision of the court, . . ."
 The Standard Operating Manual was drafted by the Oklahoma Bar Association Family Law Section. The committee in drafting this manual focused on what they considered were "best practices" for a GAL. The purpose of the best practices is to promote uniformity and consistency in GAL investigations; and promote respect for the rights of parties and the best interests of their children, including their safety.
 GAL Report, p. 16, p. 19, p. 20, p. 21.
 See, supra, n. 12.
 Mother also contends GAL failed to follow the Standard Operating Manual. However, the Report Writing section in the Standard Operating Manual only requires a GAL to provide a recommendation in the written report if ordered by the court. Nothing in the record suggests the trial court ordered GAL to provide a recommendation.
 During trial, GAL determined it was not in the child's best interest to move to New York and recommended the court should deny relocation.
 Trial Tr. Ruling, 2:8-12.